STATE OF NORTH CAROLINA v. DWIGHT EUGENE SLOAN AND KOLANDA KAY WOOTEN, DEFENDANTS

No. COA05-1513

(Filed 19 December 2006)

## 1. Homicide— first-degree murder—motion to dismiss—sufficiency of evidence—intentionally shooting into victim's vehicle

The trial court did not err by denying defendant Sloan's motion to dismiss the charge of first-degree murder based on alleged insufficient evidence that he intentionally shot into the victim's vehicle, because: (1) although defendant now tries to present a constitutional argument, constitutional issues not raised and passed upon at trial will not be considered for the first time on appeal; (2) although defendant relies on his own evidence as to his acts and intentions, in ruling on a motion to dismiss defendant's evidence should be considered only if it is favorable to the State; and (3) although defendant contested the veracity of the testimony against him, an agent's recount of her interview with defendant, combined with the introduction of evidence showing that he said he was going to kill the victim and that he had the gun when he pursued the victim's car, provided sufficient evidence to support a guilty verdict.

## 2. Evidence— hearsay—excited utterance exception

A witness's hearsay testimony as to another witness's statement that defendant Sloan should have shot the victim in the head was properly admitted under the excited utterance excep-

STATE v. SLOAN

[180 N.C. App. 527 (2006)]

tion to the hearsay rule pursuant to N.C.G.S. § 8C-1, Rule 803 when the testimony itself provided evidence of excitement, there had been at least one gun shot, the witness yelled the statement really loud for everybody to hear, and the statement was made immediately preceding a high-speed chase.

## 3. Evidence— photographs—homicide victim—illustrative purposes

The trial court did not abuse its discretion in a first-degree murder case by admitting two photographs of the victim, because: (1) the photographic evidence introduced was offered to illustrate the testimony of the State's witnesses; (2) as defendant himself acknowledges, photographs of a homicide victim may be introduced even if they are gory, gruesome, horrible or revolting, so long as they are used for illustrative purposes and so long as their excessive or repetitious use is not aimed solely at arousing the passions of the jury; and (3) the State showed that inflaming the jury was not the sole purpose of the evidence.

## 4. Homicide— first-degree murder—motion to dismiss—sufficiency of evidence—acting in concert

The trial court did not err by denying defendant Wooten's motion to dismiss the charge of first-degree murder, because: (1) although the State's evidence against defendant was circumstantial, it was nonetheless substantial; (2) shortly before the shooting of the victim, defendant had been involved in two violent confrontations with the victim, and defendant's behavior immediately prior to the victim's killing established evidence of her acting in concert to join defendant in forcibly confronting the victim; and (3) rather than leaving the area to remove herself from further criminal activity, defendant engaged in a high-speed chase with the car driven by the victim, pulled alongside the victim's car after it crashed into another car, gave her codefendant a perfect opportunity to fire the fatal shot, and drove away immediately after the victim was shot without calling for medical help or calling the police.

Judge ELMORE concurring in part and dissenting in part.

Appeal by defendants from judgments entered 19 April 2005 by Judge John W. Smith in Wayne County Superior Court. Heard in the Court of Appeals 23 August 2006.

**STATE v. SLOAN**

[180 N.C. App. 527 (2006)]

*Attorney General Roy Cooper, by Assistants Attorney General C. Norman Young, Jr. & Thomas G. Meacham, Jr., for the State.*

*Nora Henry Hargrove for defendant-appellant Sloan.*

*Richard B. Glazier for defendant-appellant Wooten.*

BRYANT, Judge.

Dwight Eugene Sloan (defendant Sloan) and Kolanda Kay Wooten (defendant Wooten), defendants, appeal from 19 April 2005 judgments consistent with jury verdicts finding both defendants guilty of first degree murder. For the reasons stated below, we find no error.

Defendant Wooten and a witness, Sherquanda Fields (Fields), both had a relationship with the victim, Jamal Pearsall (Pearsall). On 23 August 2003, Pearsall saw the two together while they were looking for defendant Wooten's brother in a car driven by defendant Wooten's aunt. Pearsall became upset and ordered Fields to get out of the car. An argument ensued and defendant Wooten broke the window out of Pearsall's car with her hand. She then rode off, with Fields still in the car.

Later that night, defendant Wooten, Pearsall, and others met to discuss payment for the car window. Defendant Wooten's boyfriend, "Don Don," arrived, and attacked Pearsall. Following the confrontation, Pearsall departed with Fields, and the two spent the night at Fields's house. Pearsall set out the next morning for his mother's house.

Witness Nora Robinson (Robinson) testified that on 24 August 2003 she saw a man with a gun behind a tree. She went inside, and then heard gunshots. She looked outside, where she saw defendant Sloan walking away from Pearsall's car, trying to cock a jammed gun and muttering. Specifically, defendant Sloan said, "I'm going to kill this mother f———." Robinson watched as defendant Sloan got into a white car. She then heard Leanne Sutton (Sutton) yell from the car, "You should have shot the mother f——— in the head." Defendant Sloan denied that he had hidden behind the tree or fired the gun. He claimed that a housemate of his, Antonio Woods (Woods), shot the gun. He also testified that he never said, "I'm going to kill this mother f———," and that no one ever said he should have shot Pearsall in the head. After defendant Sloan got into the white car, defendant Wooten, who was driving, followed Pearsall's car as it drove away.

STATE v. SLOAN

[180 N.C. App. 527 (2006)]

The evidence showed that there was a high-speed chase, during which the car Wooten was driving ran a stop sign, and Pearsall's car hit a parked car. Further testimony indicated that the white car driven by Wooten pulled even with Pearsall's car, and an unidentified black arm stuck out of the white car's window and shot into Pearsall's car.

Following the incident, defendant Sloan came forward voluntarily, accompanied by his mother and father, to discuss the matter with the authorities. SBI Agent Barbara Lewis (Agent Lewis) interviewed him, and testified from her notes. She stated that defendant Sloan said he had argued with Pearsall over some speakers that he believed Pearsall to have stolen. He told Agent Lewis that he had shot at Pearsall as he drove past Pearsall in a car driven by defendant Wooten. Agent Lewis further testified that defendant Sloan informed her that he did not intend to kill Pearsall, and that no one else in the car was aware that he had a gun prior to the shooting.

Defendant Wooten also talked to Agent Lewis. Agent Lewis stated that defendant Wooten told her that when defendant Sloan pulled out the gun and fired twice, she screamed at him, "Why did you do that, why did you do that?" Defendant Wooten told Agent Lewis that defendant Sloan responded, "[J]ust drive, don't worry about it, just drive."

At trial, both defendants were convicted of first degree Murder. Each now raises several assignments of error. For the purposes of this opinion, we will deal with the defendants separately. Defendant Sloan claims (1) the trial court erred in denying his motion to dismiss because there was insufficient evidence to uphold his conviction, (2) the trial court erred in admitting the hearsay statement of Leanne Sutton, (3) the trial court lacked jurisdiction as a result of a faulty indictment, and (4) the trial court erred in admitting photographs of Pearsall. We address these arguments in turn.

*Defendant Sloan's Appeal*

[1] Defendant Sloan first argues that the trial court should have granted his motion to dismiss the charges on the grounds that the evidence was insufficient to persuade a rational trier of fact of each essential element beyond a reasonable doubt. Specifically, defendant Sloan contends that the evidence showed only that he recklessly discharged the weapon, not that he intentionally shot into Pearsall's vehicle. This argument is without merit.

Defendant Sloan attempts in his brief to cast his argument in a constitutional light. No such argument was presented at trial, however, and defendant Sloan makes no mention of a constitutional claim in his assignment of error. "Constitutional issues not raised and passed upon at trial will not be considered for the first time on appeal." *State v. Lloyd*, 354 N.C. 76, 86-87, 552 S.E.2d 596, 607 (2001) (citing *State v. Benson*, 323 N.C. 318, 322, 372 S.E.2d 517, 519 (1988)). "[The] 'scope of appellate review is limited to the issues presented by assignments of error set out in the record on appeal; where the issue presented in the appellant's brief does not correspond to a proper assignment of error, the matter is not properly considered by the appellate court.' " *Walker v. Walker*, 174 N.C. App. 778, 781, 624 S.E.2d 639, 641 (2005) (quoting *Bustle v. Rice*, 116 N.C. App. 658, 659, 449 S.E.2d 10, 11 (1994)). Because the constitutional issue was neither raised at the trial level nor assigned as error, we will not consider it on appeal.

"In ruling on a defendant's motion to dismiss, the trial court should consider if the state has presented substantial evidence on each element of the crime and substantial evidence that the defendant is the perpetrator." *State v. Fowler*, 353 N.C. 599, 621, 548 S.E.2d 684, 700 (2001) (citations omitted). "The elements required for conviction of first degree murder are (1) the unlawful killing of another human being; (2) with malice; and (3) with premeditation and deliberation." *State v. Haynesworth*, 146 N.C. App. 523, 531, 553 S.E.2d 103, 109 (2001) (citing N.C. Gen. Stat. § 14-17; *State v. Bonney*, 329 N.C. 61, 405 S.E.2d 145 (1991)). "The evidence should be viewed in the light most favorable to the [S]tate, with all conflicts resolved in the [S]tate's favor. . . . If substantial evidence exists supporting defendant's guilt, the jury should be allowed to decide if the defendant is guilty beyond a reasonable doubt." *Fowler*, 353 N.C. at 621, 548 S.E.2d at 700 (citations omitted).

In this case, defendant Sloan killed Pearsall unlawfully, thus satisfying the first element. In his argument against the satisfaction of the other two elements, defendant Sloan relies primarily on his own evidence as to his acts and intentions. In ruling on a defendant's motion to dismiss, however, "[t]he defendant's evidence should be considered only if it is favorable to the [S]tate." *Id.* Though defendant Sloan contests the veracity of the testimony against him, Agent Lewis's recount of her interview with him, combined with the introduction of evidence showing that he said "I'm going to kill this mother f———," and that he had the gun when he pursued Pearsall's car, pro-

vided sufficient evidence to support a guilty verdict. Accordingly, defendant Sloan's first contention must fail.

[2] Defendant Sloan next argues that the trial court erred in its admission of Robinson's hearsay testimony as to Sutton's statement, "You should have shot the mother f—— in the head." Because the testimony was properly admitted under the "excited utterance" exception to the hearsay rule, this argument is without merit.

It should be noted that although defendant Sloan continues to couch his arguments in constitutional language, he once again failed to object on constitutional grounds at trial. "Constitutional issues not raised and passed upon at trial will not be considered for the first time on appeal." *Lloyd,* 354 N.C. at 86-87, 552 S.E.2d at 607.

"On appeal, the standard of review of a trial court's decision to exclude or admit evidence is that of an abuse of discretion. An abuse of discretion will be found only when the trial court's decision was so arbitrary that it could not have been the result of a reasoned decision." *Brown v. City of Winston-Salem,* 176 N.C. App. 497, 505, 626 S.E.2d 747, 753 (2006) (internal quotations and citations omitted).

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801 (2005). "Hearsay is not admissible except as provided by statute or by [the] rules [of evidence]." N.C. Gen. Stat. § 8C-1, Rule 802 (2005). The "excited utterance" exception to the hearsay rule applies to "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." N.C. Gen. Stat. § 8C-1, Rule 803 (2005).

Defendant Sloan contends that the State failed to produce any evidence that Sutton was "excited" when she made the statement, "You should have shot the mother f—— in the head." Specifically, Defendant Sloan notes that the trial judge made no findings to that effect. The trial judge did, however, state, "It's an excited utterance." Moreover, as the State points out in its brief, the testimony itself provides evidence of excitement. There had been at least one gun shot. Robinson stated that Sutton "yelled it out," and that the statement was "[r]eal loud, everybody heard her." Finally, the statement was made immediately preceding a high-speed chase. The judge's decision regarding the excited utterance, based as it was on the highly charged situation described in Robinson's testimony, was

not "so arbitrary that it could not have been the result of a reasoned decision." *Brown*, 176 N.C. App. at 505, 626 S.E.2d at 753. Accordingly, there was no abuse of discretion, and defendant Sloan's contention is without merit.

Defendant Sloan acknowledges in his brief that his third contention, that the trial court was without jurisdiction to try him for first degree murder based on the indictment, is foreclosed by case law. *See State v. Braxton*, 352 N.C. 158, 173-75, 531 S.E.2d 428, 436-38 (2000) (upholding the constitutionality of the "short form" indictment), *cert. denied*, 531 U.S. 1130, 148 L. Ed. 2d 797 (2001). As he raises this issue purely for preservation purposes, no further discussion is required.

[3] Finally, defendant Sloan argues that the trial court erred in admitting photographs of Pearsall. Specifically, defendant Sloan contends that the photographs were cumulative and that their prejudice to him outweighed their probative value. Because defendant Sloan again failed to object on constitutional grounds at trial, we will not address the constitutional language raised in his brief. "Constitutional issues not raised and passed upon at trial will not be considered for the first time on appeal." *Lloyd*, 354 N.C. at 86-87, 552 S.E.2d at 607.

"On appeal, the standard of review of a trial court's decision to exclude or admit evidence is that of an abuse of discretion. An abuse of discretion will be found only when the trial court's decision was so arbitrary that it could not have been the result of a reasoned decision." *Brown*, 176 N.C. App. at 505, 626 S.E.2d at 753 (internal quotations and citations omitted).

We note as a preliminary matter that State's exhibits 14 and 15 are the only photographs to which defendant Sloan presents specific arguments and that they were the only photographs forwarded to this Court. "Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned." *State v. McNeill*, 360 N.C. 231, 241, 624 S.E.2d 329, 336 (2006) (quotation and citation omitted). Accordingly, we will not address arguments as to any of the other photographs to which defendant Sloan objected at trial.

This Court recently addressed this issue in *State v. Gladden*, 168 N.C. App. 548, 551-52, 608 S.E.2d 93, 95-96 (2005). In *Gladden*, the defendant argued that the lower court erred in admitting autopsy photographs "because they were irrelevant and offered solely for the purpose of inflaming the jury." *Id.* at 551, 608 S.E.2d at 95. This Court

noted that "the admission of an excessive number of photographs, depicting substantially the same scene, may be prejudicial error where the additional photographs add nothing of probative value but tend solely to inflame the jury." *Id.* at 551-52, 608 S.E.2d at 95 (citations and quotations omitted). Nevertheless, this Court reaffirmed that the proper standard for determining whether to "admit photographs pursuant to Rule 403 and what constitutes an excessive number [of photographs]" is abuse of discretion. *Id.* at 552, 608 S.E.2d at 95-96 (citation omitted). Because the *Gladden* court found that the photographs were offered into evidence "to illustrate the testimony of the State's pathologist," it concluded that there was no abuse of discretion. *Id.*

In the case at bar, the State argues that the photographic evidence introduced was offered to illustrate its witnesses' testimony. Specifically, State's exhibits 14 and 15 were used to illustrate Donald Hall's testimony that there was less blood when he saw Pearsall than there was in the pictures. The State maintains that this illustrated that Pearsall's blood loss continued in the time period between Hall's arrival and when the photographs were taken. It appears from defendant Sloan's brief that he objects to the use of both photographs because he believes that the one, less gory, photograph would have sufficed. Yet as defendant Sloan himself acknowledges in his brief, "Photographs of a homicide victim may be introduced even if they are gory, gruesome, horrible or revolting, so long as they are used for illustrative purposes and so long as their excessive or repetitious use is not aimed solely at arousing the passions of the jury." *State v. Blakeney*, 352 N.C. 287, 309-10, 531 S.E.2d 799, 816 (2000) (quotations and citations omitted), *cert. denied*, 531 U.S. 1117, 148 L. Ed. 2d 780 (2001). The State has shown that inflaming the jury was not the sole purpose of the evidence. As such, it cannot be said that the trial court abused its discretion, and defendant Sloan's contentions are without merit. Having conducted a thorough review of the case, we find no error in defendant Sloan's conviction for first degree murder.

*Defendant Wooten's Appeal*

[4] We turn now to defendant Wooten. She contends that the trial court erred by denying her motion to dismiss based on insufficient evidence. We disagree.

> In ruling on the motion to dismiss, the trial court must view all of the evidence, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every

reasonable inference and resolving any contradictions in its favor. The trial court need not concern itself with the weight of the evidence. In reviewing the sufficiency of the evidence, the question for the trial court is whether there is "any evidence tending to prove guilt or which reasonably leads to this conclusion as a fairly logical and legitimate deduction." Once the court decides a reasonable inference of defendant's guilt may be drawn from the evidence, "it is for the jurors to decide whether the facts satisfy them beyond a reasonable doubt that the defendant is actually guilty."

*State v. Cross*, 345 N.C. 713, 717, 483 S.E.2d 432, 434-35 (1997) (citations omitted).

The evidence in this case was sufficient to survive a motion to dismiss. The evidence clearly showed that defendant Wooten, acting in concert with defendant Sloan, joined together to forcibly confront the victim with a weapon. *See State v. Erlewine*, 328 N.C. 626, 637, 403 S.E.2d 280, 286 (1991) ("[B]efore the jury could apply the law of acting in concert to convict the defendant of the crime . . ., it had to find that the defendant and [codefendant] had a common purpose to commit *a* crime; it is not strictly necessary, however, that the defendant share the intent or purpose to commit the particular crime actually committed.") (emphasis in original). Although the evidence presented by the State against defendant Wooten was circumstantial, it was nonetheless substantial.

Shortly before the shooting of Jamal Pearsall, defendant Wooten had been involved in two violent confrontations with Pearsall. One resulted in defendant Wooten breaking one of Pearsall's car windows, while another resulted in a physical altercation between Pearsall and defendant Wooten's boyfriend, Don Don.

Specifically, defendant Wooten's behavior immediately prior to Pearsall's killing established evidence of her acting in concert to join defendant Sloan in forcibly confronting Pearsall. Defendant Wooten encouraged defendant Sloan to approach Pearsall by notifying him that Pearsall may have taken defendant Sloan's car stereo. Defendant Wooten then provided defendant Sloan with transportation, and was driving the white car when the decision was made to pursue Pearsall rather than to report him to police. After the initial incident on Maple Street, defendant Wooten was aware that defendant Sloan had a gun. Defendant Wooten drove defendant Sloan and others around in the car after defendant Sloan had shot at Pearsall. Also, given defendant

Wooten's proximity to where statements were made regarding the gun, it is likely she heard defendant Sloan ("I'm going to kill this mother f——") and Leanne Sutton ("You should have shot the mother f—— in the head") indicating an intent to kill Pearsall. Moreover, rather than leaving the area to remove herself from further criminal activity, defendant Wooten engaged in a high-speed chase with the car driven by Pearsall, then pulled alongside Pearsall's car after it crashed into another car, and gave defendant Sloan a perfect opportunity to fire the fatal shot. Immediately after Pearsall was shot, defendant Wooten drove away without calling for medical help or calling the police.

When taken in the light most favorable to the State, the evidence against defendant Wooten, acting in concert to assault Pearsall, which actions led to Pearsall's death was substantial. This evidence was sufficient to logically and legitimately conclude defendant Wooten's guilt could be determined by the jury. As such, "it is for the jurors to decide whether the facts satisfy them beyond a reasonable doubt that the defendant is actually guilty" of the ultimate crime of first degree murder. Therefore, the trial court did not err in denying defendant Wooten's motion to dismiss.

No error.

Judge McGEE concurs.

Judge ELMORE concurs in part and dissents in part in a separate opinion.

ELMORE, Judge, concurring in part and dissenting in part.

I concur in the majority opinion that there was no error in defendant Sloan's conviction for first-degree murder. However, I respectfully dissent from that part of the majority opinion holding that the State produced sufficient evidence to survive defendant Wooten's motion to dismiss. Because I believe that the evidence was, in fact, insufficient to convince a rational trier of fact that defendant Wooten was guilty of first-degree murder, I would order a new trial for defendant Wooten.

This Court has recently outlined several guiding principles for reviewing the sufficiency of the evidence needed to survive defendant's motion to dismiss:

The evidence is to be viewed in the light most favorable to the State. All contradictions in the evidence are to be resolved in the State's favor. All reasonable inferences based upon the evidence are to be indulged in. While the State may base its case on circumstantial evidence requiring the jury to infer elements of the crime, that evidence must be real and substantial and not merely speculative. Substantial evidence is evidence from which a rational trier of fact could find the fact to be proved beyond a reasonable doubt

*State v. Berry*, 143 N.C. App. 187, 207, 546 S.E.2d 145, 159 (2001) (citations omitted).

The State recites in its brief the doctrine of acting in concert, quoting from *State v. Barnes*, 345 N.C. 184, 233, 481 S.E.2d 44, 71 (1997):

If "two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose . . . or as a natural or probable consequence thereof."

*Id.* (quoting *State v. Erlewine*, 328 N.C. 626, 637, 403 S.E.2d 280, 286 (1991)). The State then proceeds to argue its case under a theory of aiding and abetting. Under this theory,

the jury must find three things in order to convict the defendant of first-degree murder . . . : (1) that the crime was committed by another; (2) that the defendant knowingly advised, instigated, encouraged, procured, or aided the other person; and (3) that the defendant's actions or statements caused or contributed to the commission of the crime by the other person.

*State v. Bond*, 345 N.C. 1, 24, 478 S.E.2d 163, 175 (1996) (citing *State v. Francis*, 341 N.C. 156, 161, 459 S.E.2d 269, 272 (1995)).

I would find that the State failed to carry its burden under either doctrine.

To prevail under its acting in concert theory, the State must show that defendant Wooten was present, that she had joined in purpose with defendant Sloan to commit a crime, and that the crime for which she was being tried, first-degree murder, was either "in pursuance of [that] common purpose . . . or [was] a natural or probable conse-

quence thereof." *Barnes*, 345 N.C. at 233, 481 S.E.2d at 71. Though the State attempts to show that defendant Wooten had a motive to murder Pearsall, the mere presence of motive does not necessitate sending the case to the jury. Likewise, while the State hopes to prove that defendant Wooten told defendant Sloan that Pearsall had stolen his stereo in order to provoke a confrontation between the two, it offers no evidence that this was, in fact, her plan. Finally, the State points out that after being near enough to see and hear the gun being shot and Sutton shouting that defendant Sloan "should have shot the mother f—— in the head," defendant Wooten nevertheless drove after Pearsall with defendant Sloan in the car. Yet despite the majority's position that this evidence is sufficient, there remains no evidence of a common purpose. As stated above, the use of circumstantial evidence is permissible. Nevertheless, "that evidence must be real and substantial and not merely speculative. Substantial evidence is evidence from which a rational trier of fact could find the fact to be proved *beyond a reasonable doubt*." *Berry*, 143 N.C. App. at 207, 546 S.E.2d at 159 (emphasis added). In this case, the "common purpose" of defendant Wooten and defendant Sloan could easily have been to recover stolen property. Such a purpose would not have been illegal and would not have led, as a "natural or probable consequence," to murder. There is simply no substantial evidence that the two had joined together for the *purpose* of committing a crime.

Though the majority does not focus on it, the State's aiding and abetting theory also must fail. It is certain that "the crime was committed by another", namely defendant Sloan. *Bond*, 345 N.C. at 24, 478 S.E.2d at 175. Defendant Wooten's actions in driving surely "contributed to the commission of the crime." *Id.* But there is no substantial evidence that defendant Wooten "*knowingly* advised, instigated, encouraged, procured, or aided the other person." *Id.* (emphasis added). On the contrary, by all accounts, defendant Wooten was shocked by the murder.

Because I would find that it was error for the trial court to deny defendant Wooten's motion to dismiss absent substantial evidence of defendant Wooten's knowing intent to aid defendant Sloan in the commission of a crime, I respectfully dissent from that part of the majority opinion that would uphold defendant Wooten's conviction for first-degree murder.